Case 8:06-mc-00035-AW   Document 21   Filed 05/08/06   Page 1 of 9

FILED ENTERED
_____ LODGED _____ RECEIVED

MAY - 8 2006

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____ DEPUTY

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

IN THE MATTER OF THE              :
SEARCH OF 9731 SORREL AVENUE,     :    Misc. No. 06-MC-0035
POTOMAC, MARYLAND                 :

## MEMORANDUM OPINION

Pending before the court is The Washington Post's ("The Post") motion for an order granting public access to the affidavit submitted in support of the United States' application for a warrant to search the residence located at 9731 Sorrel Avenue, Potomac, Maryland (Docket No. 1). Responses to The Post's motion have been filed by the United States (Docket No. 18) and by Congressman William J. Jefferson ("Congressman Jefferson") (Docket No. 11). Replies to the Response of Congressman Jefferson have been filed by The Post (Docket No. 15) and the United States (Docket No. 19). The owners and/or residents of the searched address — 9731 Sorrel Avenue, Potomac, Maryland — have not responded to The Post's motion. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons outlined below the motion is GRANTED IN PART AND DENIED IN PART.

### FACTUAL BACKGROUND

On August 2, 2005, Special Agent Edward S. Cooper of the Federal Bureau of Investigation ("FBI") presented to this Court an application and affidavit for a search warrant for a residence located at 9731 Sorrel Avenue, Potomac, Maryland 20854. The location to be searched is the residence of Jennifer E. Douglas, also known as Jamilah Jennifer Atiku-Abubakar, a wife of the Vice President of Nigeria.

1

The affidavit states that Congressman Jefferson is a target of an investigation concerning allegations that Congressman Jefferson "has sought, is currently seeking, and in some cases, has already accepted financial backing and/or concealed payment(s) of equity interests in business ventures located in the United States, Nigeria and elsewhere (things of value) in exchange for his undertaking of official act(s) as a United States Congressman while promoting the business interests of the targets, including Jefferson himself." Affidavit at 6, Case No. 05-2890 WC. Specific criminal statutes that are alleged to have been violated are: a) Title 18, United States Code, Section 201 (bribery of a public official); b) Title 18, United States Code, Sections 1343, 1346 and 1349 (wire fraud - deprivation of honest services); c) Title 18, United States Code, Sections 1343 and 1349 (wire fraud - scheme to defraud); d) Title 15, United States Code, Sections 78dd-1 *et seq.* (bribery of a foreign official); and e) Title 18, United States Code, Section 371 (conspiracy to commit bribery, wire fraud, bribery of a foreign official).

The court issued the requested search warrant on August 2, 2005, and it was executed on the following morning, August 3, 2005. At the request of the United States, "to protect an on-going investigation," the court sealed the application and affidavit. Motion to Seal, Case No. 05-2890 WC.

Two individuals named in the affidavit have entered guilty pleas. Brett M. Pfeffer, a former Legislative Assistant to Congressman Jefferson, pled guilty to a two-count criminal information (Conspiracy to Commit Bribery of a Public Official, in violation of Title 18, United States Code, Section 371; and Aiding and Abetting the Bribery of a Public Official, in violation of Title 18, United States Code, Sections 2 and 201) on January 11, 2006 in the United States District Court for the Eastern District of Virginia (Criminal No. 1:06cr10) (Docket No. 5).

Vernon Jackson, the President and CEO of iGate Incorporated, pled guilty to a two-count criminal information (Conspiracy to Commit Bribery of a Public Official, in violation of Title 18, United States Code, Section 371; and Bribery of a Public Official, in violation of Title 18, United States Code, Sections 2 and 201) on May 3, 2006 in the United States District Court for the Eastern District of Virginia (Criminal No. 1:06cr161) (Docket No. 20). No indictment has been returned nor any criminal charges filed against Congressman Jefferson.

## DISCUSSION

A newspaper has a qualified common law right of access to affidavits supporting search warrants, but not a First Amendment right of access. *Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989). The common law qualified right of access to the warrant papers is "left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 599 (1978). "The judicial officer may deny access when sealing is 'essential to preserve higher values and is narrowly tailored to serve that interest.'" *Goetz*, 886 F.2d at 65-66 (citing *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510 (1984)). The common law presumes a right of the public to inspect and copy "all 'judicial records and documents.'" *Stone v. University of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988) (quoting *Nixon* 435 U.S. at 597).

Affidavits in support of applications for search warrants may be sealed to protect a continuing investigation, to prevent the disclosure of information gleaned from wiretaps that have not yet been terminated, or to protect the identity of informers whose lives would be endangered. *Goetz*, 886 F.2d at 64. In this case the application and affidavit were sealed to

protect an on-going investigation.

Upon receipt of The Post's motion the court invited the United States to comment on the continuing need to keep the application and affidavit sealed. On February 27, 2006, the United States stated:

> Approximately seven (7) months have elapsed since the execution of the search warrant at issue. In preparing its response to the Motion, the government has reviewed the search warrant affidavit in view of the current status of the investigation and determined that it can no longer demonstrate that the "compelling governmental interests" that existed at the time of the execution of the above-captioned search, and for a period thereafter, exist at this time.
>
> Since December 2005, the government has shared much of the formerly sensitive investigative materials contained in the affidavit with certain targets of the investigation. Indeed, many of the witnesses in this case are now publicly known and would not be compromised by further disclosure of the affidavit. In addition, there are no undercover activities currently underway that would be compromised by unsealing the affidavit. On January 11, 2006, Brett M. Pfeffer entered a plea of guilty in the Eastern District of Virginia. In connection with that plea, which was public, the government filed a statement of facts and Pfeffer publicly spoke about those facts at his plea hearing. Finally, the government acknowledges that this investigation is no longer in its preliminary stages and that any danger that the government's access to potential witnesses might be affected by the unsealing of the affidavit is minimal, if existent at all at the present time.
>
> III. Conclusion
>
> For the reasons discussed above, the government can no longer assert that there are compelling governmental interests in keeping the affidavit sealed. The government does not oppose the Motion and defers to the judgment of this Court as to whether the affidavit supporting the application for the search of the above-captioned premises should be unsealed.

Docket No. 18, at 3-4.

The United States has thus made clear that unsealing the application and affidavit will not jeopardize its on-going investigation. Therefore, the original basis for sealing the application and affidavit is no longer valid.

## TITLE III PROTECTION

The affidavit also contains information protected from disclosure by Title III of the Federal Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 United States Code, Sections 2510-2520 ("Title III"). This statute prohibits the disclosure to the public of wiretap information except in certain well-defined circumstances.

The United States Court of Appeals for the Eighth Circuit has held that use and disclosure of wiretap information in search warrant affidavits does not remove that information from the protection of non-disclosure provisions of Title III. *Certain Interested Individuals v. The Pulitzer Publishing Co. et al.*, 895 F.2d 460 (8th Cir. 1990). However, The Post invites the court's attention to two Second Circuit cases which hold that even if the affidavit for a search warrant application contains Title III information, the presence of such information does not, by itself, overcome the public's right of access. These cases are *In re Application of Newsday Inc.*, 895 F.2d 74 (2d Cir. 1990) and *In re New York Times*, 828 F.2d 110 (2d Cir. 1987).

The court has considered the analyses of both the Second and Eighth Circuits and believes the reasoning of the Eighth Circuit to be more persuasive in deciding whether Title III information should be disclosed. Consistent with the Eighth Circuit's analysis, paragraph 7 and all of paragraphs 40 through 44 which contain such information will remain under seal.[1]

---

[1] The affidavit also contains information obtained from a Cooperating Witness ("CW") who alleges that he/she was defrauded out of $3.5 million by persons connected with this case. The CW has cooperated with the FBI, by among other things, engaging in consensually recorded telephone conversations with Congressman

## PRIVACY AND REPUTATION INTERESTS

The court is to exercise its discretion to grant or withhold access to the application and affidavit "in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599. This requires the court to engage in a balancing test. Congressman Jefferson submits that his privacy and reputation interests overcome the media's common law right of access. Because of the public status of Congressman Jefferson, release of the affidavit will lead to broad dissemination of its contents. Congressman Jefferson has not been indicted. He argues that the information contained in the affidavit could taint him for life and that the harm done will not be remedied by the decision of a grand jury not to indict. Without an indictment the Congressman will not be afforded the opportunity to contest the evidence at trial and clear his name. Docket No. 11, at 6-10.

In addition, Congressman Jefferson submits that affidavits in support of search warrant applications contain "information that is far less reliable than that presented at trial, and the information is presented with far less context and explanation than is available even to the grand jury." Docket No. 11, at 3. "Search warrants may contain extraneous information that would embarrass those named in the warrant but has no bearing on the government's assertion of probable cause." *Id.* at 3-4.

The Post argues that Congressman Jefferson cannot show that unsealing the search warrant will cause damage to his reputation given the advanced stage of the government's investigation, the guilty pleas of Brett Pfeffer and Vernon Jackson which implicate Congressman

---

Jefferson and wearing a wire while engaged in face-to-face meetings with the Congressman. These consensual recordings do not fall under the Title III prohibition against disclosure. 18 United States Code, Section, 2511(2)(c).

Jefferson and the amount of information already in the public domain about the investigation. The Post also contends that the Fourth Circuit has not held that privacy or reputation interests can amount to the type of "higher value" that will outweigh the public's right of access to search warrant affidavits and that assertions of "privacy and reputation interests" cannot overcome the Fourth Circuit's presumption of access to search warrant papers. Finally, The Post avers that the public's right of access should trump any asserted privacy rights of Congressman Jefferson and that the subject matter of the investigation — securing and offering bribes in exchange for official acts — is a matter of great public concern.

In balancing the interests of Congressman Jefferson to protect his privacy and reputation against the interest of the public, the court finds the public interest outweighs the interests of Congressman Jefferson. Critical to the court's analysis are the following factors: First, Congressman Jefferson is a public servant and his conduct in the discharge of his official duties is a matter of great public interest. Second, the affidavit is not sought for an improper purpose, but rather to enhance the public's understanding of government operations. Third, one person has pled guilty to conspiracy to bribe Congressman Jefferson and aiding and abetting the bribery of Congressman Jefferson while a second person has pled guilty to conspiracy to bribe Congressman Jefferson and bribing Congressman Jefferson. The Statement of Facts in support of both pleas are matters of public record in the United States District Court for the Eastern District of Virginia. The investigation has already received significant attention in the media. The public has already had access to much of the information contained in the affidavit.

## RELEASE OF THE AFFIDAVIT WILL IMPAIR
## CONGRESSMAN JEFFERSON'S RIGHT TO A FAIR TRIAL

Congressman Jefferson contends the release of the search warrant affidavit will unfairly prejudice a grand jury hearing to whom this case may be presented and any petit jury trying the case if an indictment were to be returned. Specifically, Congressman Jefferson alleges that publication of the affidavit could provide a script for potential witnesses to use in framing their testimony and planting suggestions to replace fading memories. At trial, if jurors have heard information concerning the contents of the search warrant, such jurors may be unable to focus only on the indicted charges and admissible evidence and instead recall information contained in the search warrant or allow such information to subtly shape their perceptions of the charges and evidence. Docket No. 11, at 11-12.

Special Agent Cooper of the FBI, the affiant on the search warrant affidavit, could testify before the grand jury as to the entire contents of the search warrant affidavit, even though the testimony may be hearsay or not admissible for some other reason at trial. The allegation that the grand jury would be prejudiced by the release of the affidavit is not persuasive.

As to the argument that release of the affidavit would taint a petit jury, a court is able to conduct a voir dire that would disclose those potential jurors who could not decide the matter based solely on the evidence presented in court and the instructions provided by the trial judge. "*Voir dire* can serve in almost all cases as a reliable protection against juror bias however induced." *In re Charlotte Observer*, 882 F.2d 850, 856 (4th Cir. 1989).

Finally, jurors should be given credit for properly discharging their responsibilities. On this point the Fourth Circuit stated:

8

> The judicial system is entitled to respect the critical faculties of those citizens who give of their time as jurors. It verges upon insult to depict all potential jurors as nothing more than malleable and mindless creations of pre-trial publicity. Jurors can be skeptical about the sort of information contained in the [search warrant affidavit] here and not necessarily naive to the fallibility of various police investigative techniques. They are also quite capable of concentrating upon the evidence presented before them in open court, especially when admonished by appropriate instructions of their sober responsibility to do so.

*In re Application and Affidavit for a Search Warrant*, 923 F.2d 324, 330 (4th Cir. 1991). The court does not find the possible prejudice to a petit jury to be of such a magnitude that it outweighs the common law right of access to the application and affidavit.

## CONCLUSION

The Post has a qualified common law right of access to the application and affidavit in this case. The court has considered the position of the United States and the arguments advanced by Congressman Jefferson. With the exception of those paragraphs that will remain sealed to protect Title III information, the court does not find that continued sealing of the application and affidavit is warranted. An order consistent with this opinion will be entered.

The decision of the undersigned is subject to appeal to a United States District Judge by any party pursuant to Federal Rule of Criminal Procedure 59(a). Therefore, the court will stay the release of the application and unsealed portions of the affidavit until 2:00 p.m. on May 11, 2006 to allow a party to request a further stay pending appeal.

May 8, 2006

_____
William Connelly
United States Magistrate Judge