**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF 9731 SORREL AVENUE, POTOMAC, MARYLAND | * * * * * * * * * * | Case No. AW-06-MC-35 |

**MEMORANDUM OPINION**

This matter is before the Court on objections filed by Congressman William J. Jefferson ("Congressman Jefferson") to the May 8, 2006 memorandum opinion and order of United States Magistrate Judge William Connelly granting-in-part and denying-in-part a motion by the Washington Post ("The Post") to unseal the affidavit offered in support of a search warrant for 9731 Sorrel Avenue, Potomac, Maryland. The Sorrel Avenue residence, which is the home of Atiku Abubakar, a wife of the Vice President of Nigeria, was searched in connection with the ongoing and well-publicized corruption investigation of Congressman Jefferson. Presently pending before the Court are Congressman Jefferson's Objections to Judge Connelly's Memorandum Opinion [26] and Motion to Stay Pending Appeal [28]. The Court has reviewed the entire record and determined that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, this Court affirms Magistrate Judge Connelly's ruling.

**I.  FACTUAL & PROCEDURAL BACKGROUND**

On August 2, 2005, a special agent of the Federal Bureau of Investigation ("FBI") presented Magistrate Judge William Connelly ("Judge Connelly") with an application and affidavit for a search warrant for a residence located at 9731 Sorrel Avenue, Potomac, Maryland. The search warrant was sought in connection with the government's investigation into allegations of corruption

1

on the part of Congressman Jefferson.[1] Judge Connelly issued the requested search warrant, and the home was searched the following day. At the government's request, Judge Connelly sealed the application and affidavit "to protect an ongoing investigation."

On February 14, 2006, The Post moved to unseal the affidavit offered in support of the search warrant. The government, in its February 27, 2006 response, indicated that it did not oppose The Post's motion, as continued sealing was no longer necessary to safeguard its investigation. The owners of the searched address declined to file a response to the motion to unseal, despite an express invitation from the court to do so. On March 8, 2006, Congressman Jefferson filed an opposition to The Post's motion, arguing that his privacy and reputational interests outweighed the public's common law right of access to court records, and that unsealing the affidavit might impair his right to a fair trial.

On May 8, 2006, Judge Connelly issued a memorandum opinion and order substantially granting The Post's motion to unseal. With the exception of six paragraphs in the affidavit containing wiretap information that is protected from disclosure under Title III of the Federal Omnibus Crime Control and Safe Streets Act of 1968, Judge Connelly ruled that the warrant application and affidavit should be unsealed in their entirety, finding that Congressman Jefferson's privacy interests were outweighed by the significant public interest inherent in the criminal investigation of a sitting congressman on charges of corruption. In addition, Judge Connelly found that much of the information contained in the affidavit was already in the public domain, and that vigorous voir dire would adequately protect Congressman Jefferson's right to an impartial jury.

In his May 8, 2006 order, Judge Connelly stayed the release of the affidavit until May 11,

---

[1] Congressman Jefferson has not been indicted and has denied any wrongdoing.

2006 to allow any party to request a further stay pending appeal. On May 11, 2006, Congressman Jefferson filed a motion requesting that Judge Connelly extend the stay pending his appeal to the district court. Judge Connelly granted the motion and extended the stay until May 15, 2006. On May 12, 2006, Congressman Jefferson filed his objections to the May 8 order as well as a motion to stay the May 8 order pending the outcome of this appeal. The objections have been fully briefed and the matter is now ripe for disposition.

## II.     STANDARD OF REVIEW

Pursuant to Fed. R. Crim. P. 59(a), a district court must affirm the order of a magistrate judge unless it is "contrary to law or clearly erroneous." The "clearly erroneous" standard applies to factual findings, while legal conclusions will be rejected if they are "contrary to law." *MMI Prods., Inc.*, *v. Long*, 231 F.R.D. 215, 218 (D. Md. 2005). Under the "clearly erroneous" standard, findings of fact will not be disturbed unless the court's "review of the entire record leaves . . . the definite and firm conclusion that a mistake has been committed." *Harman v. Levin*, 772 F.2d 1150, 1153 (4th Cir. 1985).

## III.    ANALYSIS

In *Baltimore Sun Co. v. Goetz*, the Fourth Circuit held that the press has a qualified common law right of access to judicial records. 886 F.2d 60, 64-65 (4th Cir. 1989). In contrast with a First Amendment right of access, which can only be denied by proof of "compelling government interest" and a showing that the denial is "narrowly tailored" to serve that interest, under the common law the decision of whether to grant or deny access is "left to the sound discretion of the trial court, a decision to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* at 64 (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 599 (1978)). When exercising

this discretion, the court must begin with a presumption against denial of access, *see Stone v. University of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988), sealing only when it is "essential to preserve higher values" and "narrowly tailored to serve that interest," *Goetz*, 886 F.2d at 65-66.

In his objections to Judge Connelly's opinion and order, Congressman Jefferson argues that Judge Connelly erred by considering certain facts, and ignoring certain others, when balancing Congressman Jefferson's privacy interests against the public's right of access to judicial materials. However, upon reviewing the May 8, 2006 memorandum opinion, the Court finds that Judge Connelly's application of this balancing test was not contrary to law or clearly erroneous. Congressman's Jefferson's asserted privacy and reputational interests were weighed against the interests of the public and found wanting. Specifically, Judge Connelly made the following determinations:

> First, Congressman Jefferson is a public servant and his conduct in the discharge of his official duties is a matter of great public interest. Second, the affidavit is not sought for an improper purpose, but rather to enhance the public's understanding of government operations. Third, one person has pled guilty to conspiracy to bribe Congressman Jefferson and aiding and abetting the bribery of Congressman Jefferson while a second person has pled guilty to conspiracy to bribe Congressman Jefferson and bribing Congressman Jefferson. The Statement of Facts in support of both pleas are matters of public record in the United States District Court for the Eastern District of Virginia. The investigation has already received significant attention in the media. The public has already had access to much of the information contained in the affidavit.

May 8, 2006 Memorandum Opinion ("Memo. Op.") at 7. Although Congressman Jefferson raises several arguments challenging Judge Connelly's ruling, the Court finds none of them persuasive.

First, Congressman Jefferson argues that Judge Connelly's order unsealing the affidavit,

which was premised in part upon a finding that much of the information contained in the affidavit was already in the public domain, was erroneous because some of the information that would be disclosed—specifically, allegations concerning the possible bribery of a foreign official—had not yet been made part of the public record. This argument fails for several reasons. First, Judge Connelly did not hold, and Congressman Jefferson offers no authority to suggest, that unsealing is appropriate only if it does not result in the disclosure of damaging or embarrassing information. Were that the case, there would be no need to conduct the above-described balancing inquiry at all. Instead, Judge Connelly found that the public already had access to "much"—not all—of the information in the affidavit, and that whatever interest Congressman Jefferson had in keeping further details secret was outweighed by the public's interest in access to the information. Given the multifarious allegations of corruption and wrongdoing that by now have been widely disseminated in the media,[2] Congressman Jefferson fails to explain how this assertedly "new" disclosure—of alleged bribery of a foreign official—would tip the balance of interests in his favor.

Furthermore, and perhaps more significantly, allegations that Congressman Jefferson may have been involved in bribing a foreign official are already in the public domain. On May 20, 2006, the FBI raided Congressman's Jefferson's Capitol Hill office pursuant to a search warrant issued by the United States District Court for the District of Columbia. The affidavit in support of that search warrant, which was made public on Sunday, May 21, 2006, reveals that Jefferson was videotaped accepting $100,000 in cash in $100 bills from an FBI cooperator. Although the identity of the intended recipient of the $100,000 is blacked out in the affidavit, newspapers have reported that

---

[2] A simple Westlaw search of the "Major Newspapers" database for articles written in the past thirty days that mention "Jefferson" in the same sentence as "corruption" yields more than two hundred results.

Congressman Jefferson solicited the money by claiming that it would be used to bribe Nigerian officials. *See* Christopher Drew and Robert Pear, *Target of F.B.I. Had Bold Climb to Capitol Hill*, N.Y. Times, May 29, 2006, at A1 ("[W]hen Mr. Jefferson met [the FBI cooperator] at a Ritz-Carlton hotel, the F.B.I. said it supplied her with a briefcase with $100,000 in marked bills. Mr. Jefferson had told her the money would be needed to bribe Nigerian officials, the affidavit said."); Bruce Alpert, *Jefferson Case Making Legal History: Bribery Probe Triggers Constitutional Battle*, New Orleans Times Picayune, May 27, 2006 ("FBI agents who searched Jefferson's Washington, D.C., home say they found $90,000 stashed in the congressman's freezer. Prosecutors say that money was part of $100,000 given to Jefferson by a cooperating witness and was intended as a bribe to a high-ranking Nigerian official."); Allen Lengel, *FBI Document Says Tape Shows Jefferson Taking Bribe*, Wash. Post, May 22, 2006 ("Jefferson told [the FBI cooperator] he would need to give the Nigerian Vice President Atiku Abubakar $500,000 'as a motivating factor' . . . . The vice president is not mentioned by name in the affidavit, but other court documents make it clear it is him."). Thus, Congressman Jefferson's contention that he will be prejudiced by the disclosure of allegations concerning the bribery of foreign officials is without merit.

Congressman Jefferson's remaining objections are equally unavailing. Congressman Jefferson takes issue with a statement by the government, cited in Judge Connelly's memorandum opinion, that "the government has shared much of the formerly sensitive investigative materials contained in the affidavit with certain targets of the investigation." Memo. Op. at 4. Congressman Jefferson argues that this should have not been a factor in Judge Connelly's decision because the government has not shared much of the investigative material with *him*, and because it would be unfair to allow disclosure of the affidavit while other investigative materials remain withheld.

Although there may be a dispute regarding the extent to which the government shared its evidence and investigative materials with Congressman Jefferson,[3] any such dispute is largely irrelevant to the issues now before the Court, because the contested statement arose in the context of the government informing Judge Connelly that continued sealing of the affidavit was no longer necessary to protect its investigation—a prosecutorial determination that Congressman Jefferson is not in a position to challenge. Whether and to what extent the government shared its materials with Congressman Jefferson is simply immaterial to the key issue of balancing the public interest in disclosure of information against Congressman Jefferson's privacy and reputational concerns.

Congressman Jefferson's next argument is that Judge Connelly should not have considered the fact that much of the information relating to the investigation is already in the public domain because the media has received its information, at least in part, from law enforcement leaks of grand jury information. This contention fails, because, much like Congressman Jefferson's previous argument, it is a complaint regarding the government's conduct in the underlying investigation, and has nothing to do with the weighing of interests that is at the heart of this dispute. Furthermore, following the May 21, 2006 release of the 83-page affidavit supporting the search of his congressional office, Congressman Jefferson can no longer credibly claim that a significant portion of the media coverage relating to the government's investigation stems from law enforcement leaks.

---

[3]The government has filed a response to Congressman Jefferson's objections for the sole purpose of challenging his assertion that the government did not freely share investigative materials with Congressman Jefferson and his counsel. In his reply brief, Congressman Jefferson states that "he did not intend to convey the impression that the government has not yet shared any information with the defense," Reply Brief at 1, yet maintains that the government has been selective with respect to the information it has chosen to disclose. In any case, the matter presently before the Court is Congressman Jefferson's dispute with the Washington Post, not his grievances concerning the government's investigation.

Finally, Congressman Jefferson argues that Judge Connelly failed to consider the lack of any compelling need for releasing the affidavit at this particular time, and that there are no "exigent circumstances" warranting immediate unsealing. In its response, The Post suggests that by making this argument, Congressman Jefferson evinces his misunderstanding of the standard for granting access to a search warrant affidavit, in that the burden rests on him to demonstrate a need for continued sealing, not on the public or the press to show a need for disclosure. This Court agrees, noting that there is a presumption in favor of access to judicial materials, *see Stone*, 855 F.2d at 180, and that Congressman Jefferson bore the burden of establishing that continued sealing was "essential to preserve a high value," *Goetz*, 886 F.2d at 65-66. Judge Connelly concluded that Congressman Jefferson had failed to meet his burden, finding that the public had a particulary strong interest in access to information regarding the criminal investigation of an elected official. This Court can see no basis for setting aside that determination.

## IV. CONCLUSION

For the aforementioned reasons, the Court AFFIRMS Judge Connelly's May 8, 2006 order, finding that it was not "contrary to law or clearly erroneous." A separate order follows.

June 1, 2006                                   /s/
                                               Alexander Williams, Jr.
                                               United States District Court